OPINION
{¶ 1} Plaintiffs-appellants, Ralph and Sharon Skinkiss, appeal a decision of the Warren County Court of Common Pleas granting them injunctive relief in an action against their neighbor, defendant-appellee, Andrew Gleeson. Appellee cross-appeals. For the reasons outlined below, we affirm the decision of the trial court.
 {¶ 2} This action involves two properties located in the Briarwood subdivision in *Page 2 
Morrow, Ohio. Appellants own and occupy a parcel of real property located on Bramblebush Road. Their property shares a north-south boundary line with appellee's property, located on Waynesville Road. Around 2001, appellee's predecessor-in-title, Rodney Gaylor, constructed a pond at the rear of his property to control excessive drainage problems. Appellee purchased the property from Gaylor in December 2003, and continues to maintain the pond.
 {¶ 3} The portion of appellants' property abutting the pond was swampy and impossible to mow. In March 2004, Warren County Soil and Water Conservation District technician Don Norman inspected the pond and concluded that the manner in which the pond had been constructed caused wetness on appellants' property. Appellants mailed several letters to appellee advising him of the problem and asking him to resolve it. Appellee did not take any remedial action, and appellants filed their original complaint in July 2004.
 {¶ 4} Following an October 2004 survey, appellants discovered that the pond embankment encroached upon their land. They filed an amended complaint in November 2004, praying for monetary damages[1] and injunctive relief in the form of a court order directing appellee to (1) lower and maintain the water level in the pond, (2) remove the portion of the embankment encroaching upon appellants' property, and (3) erect a permanent retaining wall to prevent future encroachment.
 {¶ 5} The trial court conducted a bench trial in September 2006. Thereafter, the court issued its decision ordering appellee to abate the trespass caused by the portion of the embankment extending upon appellants' property. The decision also provided that appellants may elect to install a drainage channel, but both parties must bear the cost. The court declined to order appellee to lower the water level in the pond. Appellants timely *Page 3 
appeal, raising two assignments of error. Appellee cross-appeals, raising four assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE COURT ERRED AND ABUSED ITS DISCRETION BY NOT ORDERING APPELLEE TO LOWER THE WATER LEVEL WITHIN THE POND TO THE NATURAL GROUND LEVEL OF THE SHARED NORTH-SOUTH PROPERTY LINE THEREBY ELIMINATING THE LEAKAGE OF POND WATER UPON APPELLANTS' LAND."
 {¶ 8} Assignment of Error No. 2:
 {¶ 9} "THE COURT ERRED IN ITS `BALANCING OF THE EQUITIES' BY DECLINING TO ENJOIN THE APPELLEE/DEFENDANT TO STOP THE CONTINUOUS FLOW OF LEAKING WATER ONTO APPELLANTS'/PLAINTIFFS' PROPERTY BY LOWERING THE ELEVATED WATER LEVEL OF THE POND TO THAT OF THE NATURAL TERRAIN."
 {¶ 10} Appellants' first and second assignments of error challenge the trial court's refusal to order appellee to lower the water level in the pond and its order that both parties bear the cost if appellants elect to build the drainage channel. Appellants argue that the evidence establishes that the water level cannot remain above the natural terrain level because the improper construction of the pond, including the permeable fill of the embankment and the planting of pine trees atop the embankment, causes the pond water to continually leak onto their property. Appellants contend that the trial court improperly balanced the equities in refusing to order appellee to lower the water level in the pond.
 {¶ 11} Appellants also insist that the drainage channel is not a feasible alternative because it would damage the mature trees on appellants' property and would make the embankment even narrower and more unstable. Appellants maintain that their property line *Page 4 
does not border a nearby drainage ditch, therefore the drainage channel could not connect to it and any water directed through such a channel would have nowhere to go.
 {¶ 12} In order to obtain a permanent injunction, a party must show by clear and convincing evidence that immediate and irreparable injury, loss, or damage will result to the applicant and that there is no adequate remedy at law. City of Middletown v. Butler Cty. Bd. of Cty.Commrs. (Feb. 13, 1995), Butler App. No. CA94-03-084, at 5. The trial court must engage in a balancing process designed to weigh the equities between the parties in determining whether or not injunctive relief is appropriate. Busch v. Vosler (May 27, 1997), Preble App. No. CA96-09-014, at 4. This analysis involves considering and weighing "the relative conveniences and comparative injuries to the parties which would result from the granting or refusal of injunctive relief."Miller v. City of West Carrollton (1993), 91 Ohio App.3d 291, 296.
 {¶ 13} The grant or denial of an injunction is solely within the trial court's discretion, and a reviewing court should not disturb the judgment of the trial court absent a showing of a clear abuse of discretion. Back v. Faith Properties, LLC, Butler App. No. CA2001-12-285, 2002-Ohio-6107, ¶ 9. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 14} The trial court's order provided that if appellants elected to install the drainage channel they were required to make the election in writing by January 1, 2007. Appellants failed to choose this option by the deadline, and did not file for a stay of the time limitation to elect pending appeal. Thus, the drainage channel remedy is no longer available to appellants. This does not mean, however, that appellants are foreclosed from addressing the propriety of the trial court's decision to order this remedy in the first place. We shall *Page 5 
address appellants' arguments in the context of whether the trial court abused its discretion in ordering the drainage channel rather than the lowering of the water level in the pond.
 {¶ 15} Upon review of the trial court's decision, it appears that the court equitably considered and balanced the relevant evidence in fashioning its order. The evidence supports a finding that the standing water on appellants' property was at least partially the result of natural surface water runoff. Prior to the construction of the pond, the area was predisposed to wetness after heavy rains because it is a low spot where natural drainage flows. Gaylor was told that the area was a natural drainage easement. Increased development of the area further aggravates the surface water runoff problem.
 {¶ 16} According to the testimony of Warren County technician Don Norman, appellee's pond actually retains and decreases a large amount of runoff that would otherwise enter appellants' property. Norman opined that the wetness on appellants' property was relatively minor and would likely be easy to fix. Appellee met with Norman and discussed possible solutions, but appellants were not cooperative and refused to allow any changes to their property to resolve the problem.
 {¶ 17} On the other hand, the evidence also supports the finding that the pond was improperly constructed and such improper construction increases the standing water on appellants' property. The evidence establishes that the pond embankment encroaches onto appellants' property. This encroachment impedes natural water drainage on appellants' property. Due to the relatively flat topography of the land in this area of Warren County, drainage is already naturally poor. The encroaching embankment of appellee's pond thus exacerbates the drainage problem on appellants' property.
 {¶ 18} Registered civil engineer James Kleingers testified about two potential solutions to the problem. One option was to provide a ditch or drainage to some positive outlet. The other option was to install an underground drain. Regardless of whether the excess water on *Page 6 
appellants' property originated from pond seepage or natural surface runoff, Kleingers opined that a positive flow system along the parties' shared property line would alleviate the problem.
 {¶ 19} In light of these facts, it appears that the trial court balanced the equities and ordered equitable remedies. The evidence conclusively establishes that the pond embankment encroaches upon appellants' property, and the injunction clearly ordered appellee to abate this trespass. The trial court's second remedy, installation of a drainage pipe at appellants' election with costs split between the parties, was reasonable in view of the uncertainty surrounding the source of the excess water and the expert testimony on how best to remedy the situation.
 {¶ 20} We conclude that the trial court did not abuse its discretion in refusing to order appellee to lower the water level in the pond. The court also did not err in ordering appellee to abate the trespass and in permitting appellants to elect to install a drainage channel with shared costs. These remedies were equitable under the facts of the case.
 {¶ 21} Appellants' first and second assignments of error are overruled.
 {¶ 22} Cross-Assignment of Error No. 1:
 {¶ 23} "THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE PLAINTIFFS' COMPLAINT WAS BARRED BY LACHES."
 {¶ 24} Appellee maintains that, as a matter of law, the trial court erred in failing to find that appellants' complaint was barred by laches. Appellee emphasizes the fact that the pond was constructed in 2001 and appellants did not initiate this lawsuit until mid 2004. Appellee alleges that appellants were aware of their dissatisfaction with the pond while Gaylor owned the property, and waited until appellee purchased the property to file suit.
 {¶ 25} We review questions of law raised by this appeal de novo, independently and without deference to the trial court's decision.Jurcisin v. Fifth Third Bank, Clermont App. No. *Page 7 
 {¶ 26} "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." Todd Dev. Co., Inc. v. Morgan, Warren App. No. CA2005-11-124, 2006-Ohio-4825, ¶ 58, quoting Baughman v. State Farm Mut.Auto. Ins. Co., 160 Ohio App.3d 642, 646-47, 2005-Ohio-1948. The elements of this defense include: "(1) [an] unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." Morgan at ¶ 58, quoting Portage Cty. Bd.of Commrs. v. Akron, 109 Ohio St.3d 106, 122, 2006-Ohio-954.
 {¶ 27} After reviewing the record, we conclude that appellants' complaint was not barred by laches. Had the pond been properly constructed, it would have benefitted both parties and appellants would have had no reason to complain. Appellants were under no obligation to survey their property after the pond was built to ensure that the embankment did not encroach upon their land. Appellants thus had no cause for concern until they discovered a problem with the pond. Therefore, appellants did not have knowledge of the injury or wrong until such a problem arose. Further, appellants did not unreasonably delay in asserting their rights. Construction of the pond began in 2001, though the record does not indicate when it was finished. Appellants became suspicious that the pond was contributing to water accumulation on their land around January 2004. Once they discovered this, they had cause to pursue legal action.
 {¶ 28} After attempts to resolve the situation by communicating with the realtor and appellee proved fruitless, appellants filed suit in July 2004. The action was thus not instituted long after appellants discovered the problem. Appellee did not suffer prejudice as a result of the delay. There is no evidence in the record to support appellee's contention that appellants *Page 8 
waited until he purchased the property to file suit.
 {¶ 29} Appellee's first cross-assignment of error is overruled.
 {¶ 30} Cross-Assignment of Error No. 2:
 {¶ 31} "THE TRIAL COURT ERRED IN FINDING THAT MONETARY DAMAGES WERE INADEQUATE TO COMPENSATE THE PLAINTIFF FOR THE HARM."
 {¶ 32} Appellee asserts that injunctive relief was not appropriate because there was an adequate remedy at law, namely, monetary damages. In support, appellee states that he could have purchased the affected portion of appellants' property rather than the trial court ordering one of the costlier remedies proposed by civil engineer Kleingers to remedy the drainage problem.
 {¶ 33} An injunction is an equitable remedy that is only appropriate where there is not an adequate remedy at law. Haig v. Ohio State Bd. ofEd. (1992), 62 Ohio St. 3d 507, 510. In the case at bar, the trial court implicitly determined that equity did not require appellants to sell the affected portion of their property to appellee to remedy the situation. Money damages were thus inadequate to compensate appellants, and the trial court did not err in ordering an injunction because there was not an adequate remedy at law.
 {¶ 34} Appellee's second cross-assignment of error is overruled.
 {¶ 35} Cross-Assignment of Error No. 3:
 {¶ 36} "THE TRIAL COURT ERRED IN FAILING TO FIND THE PLAINTIFFS' CLAIMS WERE PRECLUDED BY THE DOCTRINE OF ECONOMIC WASTE."
 {¶ 37} Appellee urges that the remedy sought by appellants and granted by the trial court ordering appellee to remove the part of the embankment encroaching upon appellants' property constituted economic waste. Appellee insists that the cost of this remedy exceeded the diminution in value to appellants' property resulting from the minimal trespass. A more *Page 9 
equitable remedy, according to appellee, would have been for him to purchase the portion of appellants' property encumbered by the encroachment. In the alternative, the parties could have installed a drainage trench.
 {¶ 38} Where a complainant seeks to compel removal of improvements made to real property, financial prejudice may involve economic waste. 27A American Jurisprudence 2d (2007) Equity, Section 189. Under the present circumstances, however, the trial court's order for appellee to remove the encroaching portion of the embankment did not constitute economic waste. The encroaching embankment was a continuing trespass. The evidence supports that, as a result of this trespass, natural drainage of surface water runoff on appellants' property was impeded, resulting in standing water. The trial court's remedy ordering removal of the encroachment served to address both the actual trespass as well as the ongoing harm occasioned by the impeded drainage problem.
 {¶ 39} As stated above, the trial court implicitly found that monetary damages were inadequate to remedy this trespass. Under these facts, where there was a continuing trespass and monetary damages were inadequate to remedy the trespass, injunctive relief ordering abatement of the trespass did not rise to the level of economic waste. Cf.Fouts v. Salay (June 11, 1981), Cuyahoga App. No. 42664, 1981 WL 10361, at *4.
 {¶ 40} As previously stated, the trial court implicitly determined that equity did not oblige appellants to sell the affected portion of their property to remedy the situation. As for the drainage ditch, the trial court named this remedy in its decision granting the injunction but left to appellants the decision whether or not to implement it. We conclude that the trial court did not abuse its discretion in ordering appellee to remove the part of the embankment encroaching upon appellants' property.
 {¶ 41} Appellee's third cross-assignment of error is overruled. *Page 10 
 {¶ 42} Cross-Assignment of Error No. 4:
 {¶ 43} "THE TRIAL COURT ERRED IN FINDING EVIDENCE SUFFICIENT TO CONCLUDE THAT THE GLEESON'S POND IS LEAKING AND/OR THAT THE GLEESON POND CONTRIBUTES TO THE WETNESS AT THE REAR OF THE SKINKISS PROPERTY, OR HAS OTHERWISE ALTERED THE HISTORICAL CONDITION OF THE PROPERTY."
 {¶ 44} Appellee claims that the trial court's order permitting appellants to elect the installation of a drainage channel was against the manifest weight of the evidence. However, as we noted in addressing appellants' assignments of error, the issue is now moot. Appellants failed to elect this remedy by the January 1, 2007 deadline and failed to file a motion to stay the time limitation to elect this remedy imposed by the trial court's order. Appellants therefore can no longer institute this remedy. Consequently, pursuant to the trial court's decision, appellee is not obligated to take any further action to remediate the drainage problem aside from abating the trespass.
 {¶ 45} Appellee also disputes the trial court's finding that the pond leaked. However, the trial court's first remedy, removal of the encroaching embankment, was not dependent upon the leakage finding. The undisputed evidence supports that the pond embankment encroaches upon appellants' property. Expert testimony upholds the conclusion that the encroachment impedes the natural water flow on appellants' property. These conclusions remain unchanged despite whether or not the trial court found that the pond leaked.
 {¶ 46} We conclude that the trial court did not err in ruling that appellee's pond contributed to the wetness on appellants' property. Appellee's fourth cross-assignment of error is overruled.
 {¶ 47} Judgment affirmed. *Page 11 
WALSH and POWELL, JJ., concur.
[1] Appellants withdrew their claim for monetary damages prior to trial. *Page 1